IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


LATICIA N. BEATTY,                )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          1:21CV818
                                  )
PRUITTHEALTH, INC.,               )
PRUITTHEALTH-CAROLINA POINT,      )
LLC, KURTIS JONES,                )
individually and in his          )
official capacity, and           )
DELLA MERVIN, individually       )
and in her official capacity,    )
                                  )
          Defendants.            )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss Plaintiff's

Complaint, (Doc. 14), filed by Defendants PruittHealth, Inc.,

PruittHealth-Carolina Point, LLC, Kurtis Jones, and Della

Mervin. Plaintiff Laticia N. Beatty has not responded. For the

reasons that follow, Defendants' motion to dismiss will be

granted in part and denied in part.

Defendants have also filed a Motion for Expansion of Word

Limit, (Doc. 13). That motion will be granted.

# I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks omitted) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiff, are as follows.

## A.   **Factual Background**

Plaintiff has worked in nursing home administration for twelve years. (See Compl. (Doc. 1) ¶ 7.)[1] PruittHealth, Inc. operates PruittHealth-Carolina Point, LLC in Durham County, North Carolina. (Id. ¶ 2.) Kurtis Jones is the Area Vice President of PruittHealth and was Plaintiff's supervisor. (Id. ¶ 4.) Della Mervin is the Director of Partner Services at PruittHealth and was Plaintiff's direct contact to Human Resources. (Id.)

Plaintiff first began working for PruittHealth in 2014 and worked there for four-and-a-half years. (Id. ¶ 9.) Plaintiff was rehired by PruittHealth on March 23, 2020. (Id. ¶ 10.)

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-2-

A week later, Plaintiff was diagnosed with COVID-19. (Id. ¶ 24.) She began working from home on April 7, 2020. (Id.) On May 27, 2020, Plaintiff received a doctor's note recommending Plaintiff "work four hours per day for two weeks then increase." (Id. ¶ 25; Doc. 1-7.) Plaintiff provided this note to Defendants on May 29, 2020. (Compl. (Doc. 1) ¶ 25.) Plaintiff was required to report to work the next day. (Id.)

Plaintiff returned to work in-person "[o]n May 30, 2020, against doctor's restrictions, . . . working for no more than 4 hours." (Id. ¶ 26.) While Plaintiff was recovering from COVID-19, she "was responsible for interviewing housekeeping, nurses, certified nursing assistants and department heads." (Id. ¶ 29.) Plaintiff alleges that because of her disability "Jones unilaterally removed [Plaintiff] from emails making it difficult for her to complete her duties." (Id. ¶ 28.) Plaintiff told Defendants "that the duties that were placed on her could not be done in 4 hours due to the issue that the other employees had no training of the new changes in the system that PruittHealh was implementing." (Id. ¶ 33.) On or around June 8, 2020, Plaintiff called the Company Hotline to complain about "disability harassment." (Id. ¶¶ 27, 30.)

On June 15, 2020, Plaintiff texted Jones that she felt ill. (Id. ¶¶ 34-35.) Plaintiff decided to work outside. (Id.) Jones

-3-

and Mervin told Plaintiff "it was unprofessional" for Plaintiff to work outside. (Id.)

Plaintiff reported "continuous threats and disability harassment" to Mervin. (Id. ¶ 28.) Plaintiff also alleges a coworker resigned "[a]s an intimidation and retaliatory tactic." (Id. ¶ 36.)

On June 16, 2020, Plaintiff was reinfected with COVID-19 and returned to work six days later. (Id. ¶¶ 37-38.) Plaintiff alleges when she returned to work "the discrimination and harassment continued." (Id. ¶ 38.) She also alleges that "[o]n July 7, Tiffany Ray DHS exposed [a] plot to conspire against Plaintiff and replace her with Alexander Parker per Defendant AVP Jones instruction." (Id. ¶ 40.) On July 31, 2020, Plaintiff experienced shortness of breath, nausea, and vomiting while at work. (Id. ¶ 39.) A nurse practitioner found Plaintiff in her car in pain, and Plaintiff ended up hospitalized. (Id.)

On August 7, 2020, Plaintiff "sent a letter of harassment and complaint of discrimination to Neal Pruitt, the owner of [PruittHealth]." (Id. ¶ 42; see also Doc. 1-4.) She did not receive a response. (Compl. (Doc. 1) ¶ 42.) The next day

-4-

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge. (Id. ¶ 43; Doc. 1-11.)[2]

On August 10, 2020, Plaintiff sent Defendants a doctor's note stating that Plaintiff could not come into work until further notice. (Compl. (Doc. 1) ¶¶ 44-45.) Defendants did not discuss any accommodations with Plaintiff. (Id.) On August 26, 2020, Plaintiff submitted an Americans with Disability Act ("ADA") physician's certification indicating Plaintiff's condition would likely last a year. (Id. ¶ 46; Doc. 1-8 at 3.) On September 15, 2020, Plaintiff texted Mervin a message "in reference to the Family Medical Leave 'FMLA' and ADA." (Compl. (Doc. 1) ¶ 47; see also Doc. 1-9.) In her reply, Mervin did not mention accommodation proposals. (Compl. (Doc. 1) ¶ 47.)

Plaintiff received her last paycheck and PTO payment on November 10, 2020. (Id. ¶ 48.) Plaintiff alleges she was constructively terminated and retaliated against because of her disability. (Id.) On December 1, 2020, Plaintiff contacted Mervin. (Id. ¶ 49.) Mervin provided no updates regarding accommodations. (Id.) On February 8, 2021, Plaintiff was terminated. (Id. ¶ 51.) Plaintiff alleges this was the first time she received information about the ADA. (Id.) On July 23,

_____

[2] While Plaintiff alleges she filed her EEOC charge on August 8, 2020, (Compl. (Doc. 1) ¶ 43), the EEOC charge has a date of September 23, 2020, (Doc. 1-11).

-5-

2021, Plaintiff received a right to sue letter from the EEOC. (Id. ¶ 54; Doc. 1-10.)

Based on the foregoing, Plaintiff alleges Defendants discriminated against her because of her disability, race, color, and national origin, and committed several other violations of federal and state laws. (See Compl. (Doc. 1) ¶¶ 93-204.)

## B. **Procedural Background**

On October 21, 2021, Plaintiff filed her Complaint. (Compl. (Doc. 1).) Defendants filed a Motion for Expansion of Word Limit, (Doc. 13), given the length of Plaintiff's Complaint. Defendants also filed a motion to dismiss, (Doc. 14), along with a brief in support, (Defs.' Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. ("Defs. Br.") (Doc. 15)).

On March 23, 2022, the Clerk sent Plaintiff a letter advising her of the motion to dismiss and her right to respond. (Doc. 16.) On May 4, 2022, the Clerk sent Plaintiff a second letter regarding Plaintiff's lack of response to the motion to dismiss. (Doc. 17.) Plaintiff has yet to file a response.

## II. **STANDARD OF REVIEW**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

-6-

face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. <u>Id.</u> Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." <u>Est. of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

This court is required to liberally construe pro se complaints. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)). "[C]ourts are not required," however, "to conjure up questions never squarely presented to them." <u>Deabreu v. Novastar Home Mortg., Inc.</u>, 536 F. App'x 373, 375 (4th Cir. 2013) (per curiam) (quoting <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985)). "The

'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate." <u>Weller v. Dep't of Soc. Servs. for City of Balt.</u>, 901 F.2d 387, 391 (4th Cir. 1990).

## III. <u>ANALYSIS</u>

Plaintiff has not responded to Defendants' Motion to Dismiss. For that reason alone, this court could grant Defendants' motion. <u>See</u> Fed. R. Civ. P. 41(b). However, despite this court's inherent authority to sanction a party with dismissal of an action, <u>see</u> <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 629–30 (1962); <u>Projects Mgmt. Co. v. Dyncorp Int'l LLC</u>, 734 F.3d 366, 373 (4th Cir. 2013), this court is mindful that dismissal is a harsh sanction, and the need "to prevent delays must be weighed against the sound public policy of deciding cases on their merits." <u>Dove v. CODESCO</u>, 569 F.2d 807, 810 (4th Cir. 1978) (quoting <u>Riezakis v. Loy</u>, 490 F.2d 1132, 1135 (4th Cir. 1974)). Considering Plaintiff's pro se status, this court will consider Defendants' motion on the merits notwithstanding Plaintiff's failure to respond. As explained, this court will dismiss all but two of Plaintiff's claims.

### A. <u>Title VII Claims</u>

Plaintiff alleges Defendants discriminated and retaliated against Plaintiff because of her race, color, and national

-8-

origin in violation of Title VII, 42 U.S.C. § 2000e, et seq. (See Compl. (Doc. 1) ¶¶ 57, 120.)[3] Defendants argue Plaintiff's Title VII allegations should be dismissed because Plaintiff's EEOC charge asserted discrimination on the basis of her disability. (Defs.' Br. (Doc. 15) at 5-6.)[4]

"Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the [EEOC]. This charge frames the scope of future litigation." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."). "Generally, a claim in a plaintiff's civil suit will be barred if . . . the charge alleges one basis of discrimination (e.g., sex) and the complaint alleges a different basis of

---

[3] Plaintiff does not allege a specific claim under Title VII but makes several references to Title VII throughout her Complaint. (See, e.g., Compl. (Doc. 1) ¶¶ 57, 59, 120.) This court will construe those allegations as a claim under Title VII.

[4] Defendants move to dismiss Plaintiff's Title VII claims pursuant to Federal Rule of Civil Procedure 12(b)(1). (See Defs.' Br. (Doc. 15) at 5-6.) However, the Supreme Court has clarified that motions to dismiss Title VII claims because of a plaintiff's failure to exhaust the administrative requirements is not a jurisdictional issue and should be considered under Rule 12(b)(6) instead of Rule 12(b)(1). See Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1850-52 (2019). Therefore, this court will consider Defendants' motion to dismiss Plaintiff's Title VII claims under Rule 12(b)(6).

Case 1:21-cv-00818-WO-JEP  Document 19  Filed 08/25/22  Page 9 of 32

discrimination (e.g., race) . . . ." High v. R & R Transp.,
Inc., 242 F. Supp. 3d 433, 439 (M.D.N.C. 2017); see also Jones
v. Calvert Grp., Ltd., 551 F.3d 297, 301 (4th Cir. 2009)
(affirming the district court's determination that the plaintiff
failed to exhaust her administrative remedies when the plaintiff
did not allege discrimination on the basis of age, sex, or race
in her EEOC charge), abrogated on other grounds by Fort Bend
Cnty., 139 S. Ct. 1843.

This court finds Plaintiff failed to properly exhaust her
Title VII claims. Plaintiff's EEOC charge indicates
discrimination based on disability; no other basis for
discrimination is checked. (See Doc. 1-11.) Plaintiff cannot
bring a claim for race, color, and national origin
discrimination without first filing a charge alleging that
discrimination with the EEOC. See Chacko, 429 F.3d at 509; see
also Smith v. Honda Power Equip. Mfg., Inc., NO. 5:22-CV-86-FL,
2022 WL 2333874, at *1 (E.D.N.C. June 28, 2022) (dismissing the
plaintiff's Title VII discrimination and retaliation claims for
failure to exhaust). Accordingly, Plaintiff's Title VII claims
will be dismissed.

**B.   Claim One: ADA Discrimination**

Plaintiff alleges a claim of discrimination under the ADA.
(See Compl. (Doc. 1) ¶¶ 93-106.) "To establish a claim for

-10-

disability discrimination under the ADA, a plaintiff must prove
'(1) that she has a disability, (2) that she is a 'qualified
individual' for the employment in question, and (3) that [her
employer] discharged her (or took other adverse employment
action) because of her disability.'" Jacobs v. N.C. Admin. Off.
of the Cts., 780 F.3d 562, 572 (4th Cir. 2015) (alteration in
original) (quoting EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d
373, 377 (4th Cir. 2000)).

This court finds Plaintiff has failed to plausibly allege
she was discharged because of her disability. The only
allegation Plaintiff makes regarding why Defendants discharged
her is a bare-bones legal conclusion, to which this court is not
required to give any deference. See Iqbal, 556 U.S. at 678.
Plaintiff alleges "[t]he adverse employment actions taken by
Defendants were because of, and in response to, Plaintiff's
complaints of harassment and discrimination." (Compl. (Doc. 1)
¶ 103.) Plaintiff has failed to allege facts that suggest "more
than a sheer possibility" that Defendants failed to provide
reasonable accommodations or that Defendants dismissed Plaintiff
because of her disability. See Iqbal, 556 U.S. at 678.

Moreover, this court finds that Plaintiff has failed to
plausibly allege that she was a qualified individual. "A
'qualified individual with a disability' is one 'who, with or

-11-

without reasonable accommodation, can perform the essential functions' of her job.'" EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000) (quoting 42 U.S.C. § 12111(8)). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential . . . ." 42 U.S.C. § 12111(8). "An employee who does not come to work cannot perform any of his job functions, essential or otherwise. An essential job function includes a regular and reliable level of attendance. An employee who cannot meet the attendance requirements of the job at issue cannot be considered a qualified individual . . . ." Khan v. UNC Health Care Sys., No. 1:20CV977, 2021 WL 4392012, at *6 (M.D.N.C. Sept. 24, 2021) (cleaned up) (quoting Tyndall, 31 F.3d at 213). Courts grant motions to dismiss ADA discrimination claims when "attendance was an essential function" of a plaintiff's job and they are "consistently absent . . . until the day of [their] termination with no end in sight." See, e.g., id. at *7.

Here, Plaintiff's supervisor expressly told Plaintiff that her job required in-person, daily attendance: "please note that as an administrator your [sic] expected to be in the center from

-12-

9am-4:30pm." (Doc. 1-7 at 1.)[5] This is consistent with the
position description which stated that the position required
compliance with the "center's policies on attendance" and the
ability "to arrive and begin work on time . . . [and] respond to
center[']s needs 24 hours a day/ 7 days a week." (Doc. 1-12 at
4.) Plaintiff's allegations reveal that she was unable to
perform this essential function of her job. Indeed, on August
10, 2020, she provided Defendants a doctor's note stating that
she "could not come to work until further notice." (Compl.
(Doc. 1) ¶ 44.) The note itself states "I'm not sure [patient]
can actually work at this time" and states that the "[p]robable
duration of condition" is "1 year." (Doc. 1-8 at 2-3.) Given
that an essential function of Plaintiff's job was to work in-
person each day at the center, and her condition prevented her
from doing that, she has not plausibly alleged that she is a
qualified individual. Therefore, this court finds Plaintiff has
failed to plausibly allege an ADA discrimination claim.

Plaintiff also appears to allege a claim for retaliation in
violation of the ADA. (See Compl. (Doc. 1) ¶¶ 101-02.) In order
to plausibly state a claim of retaliation under the ADA, "a

---

[5] The court can consider this and other documents that
Plaintiff "attached to the complaint as exhibits." Goines v.
Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016)
(citing Federal Rule of Civil Procedure 10(c)).

-13-

plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002).

Plaintiff alleges she engaged in protected activity "by complaining about the ongoing discrimination and harassment on the basis of her disability at PruittHealth," and that she reported concerns about discrimination to the PruittHealth Complaint Hotline and sent a letter about discrimination to the owner of PruittHealth. (Compl. (Doc. 1) ¶¶ 30, 42, 101.) However, Plaintiff fails to plausibly allege a causal link between that protected activity and her termination. There are no allegations suggesting that the people who terminated Plaintiff were aware of her reports of harassment and discrimination. See Graves v. Bank of Am., N.A., 54 F. Supp. 3d 434, 443 (M.D.N.C. 2014) (finding that in the ADA retaliation context, "[e]mployer knowledge of an EEOC charge is 'absolutely necessary' for a finding of retaliation" (quoting Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998))). Moreover, the passage of six months between Plaintiff sending a letter to PruittHealth's owner and her termination is too long

-14-

to plausibly suggest retaliation. See Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."); Jones v. Dole Food Co., 827 F. Supp. 2d 532, 554 (W.D.N.C. 2011) ("[C]omplaints of retaliation are considered stale after only a few months."). As a result, Plaintiff fails to plausibly allege a case of retaliation. To the extent Plaintiff alleges an ADA retaliation claim, that claim will be denied.

Finally, Plaintiff appears to allege a hostile work environment in violation of the ADA claim. (See Compl. (Doc. 1) ¶¶ 45-46, 67, 96-98.) To establish an ADA hostile work environment claim, a plaintiff must sufficiently allege:

> (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

Fox v. General Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001).

As explained, Plaintiff has not plausibly alleged that she is a qualified individual. Because Plaintiff has failed to

-15-

allege one of the required elements of a hostile work environment claim, this court will dismiss Plaintiff's claim.[6]

In summary, Plaintiff's claims under the ADA—disability discrimination, retaliation, and hostile work environment—will all be dismissed.

## C.    Claim Two: Antitrust

Plaintiff alleges PruittHealth violated anti-trust laws "by restraining Plaintiff's ability to compete in the marketplace by maintaining use of Plaintiff's licensure." (Compl. (Doc. 1) ¶ 114.) This court construes this claim as a Sherman Act Section 1 claim.[7]

---

[6] Plaintiff may also have failed to state sufficient plausible facts to "clear [the] high bar" of "the severe or pervasive test." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (distinguishing actionable "hostile work environment" from mere "rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor" (cleaned up) (quoting Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 276 (4th Cir. 2000))).

[7] This court construes Claim Two as a Sherman Action Section 1 claim and not a Sherman Act Section 2 claim. A violation of Section 2 "consists of two elements: (1) the possession of monopoly power in the relevant market, and (2) willful maintenance of that power." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 450 (4th Cir. 2011). Plaintiff's Complaint contains no allegations from which this court can reasonably infer Defendants had a monopoly over any market. (See Compl. (Doc. 1).)

-16-

To state a claim under Section 1 of the Sherman Act, a plaintiff must allege there was "(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade." Dickson v. Microsoft Corp., 309 F.3d 193, 202 (4th Cir. 2002).

Defendants argue "Plaintiff's claim fails because she does not allege any agreement between PruittHealth, Inc. (or the other Defendants for that matter) and any third party to restrain trade." (Defs.' Br. (Doc. 15) at 14.) This court agrees.

Section 1 of the Sherman Act "applies only to concerted action, and not unilateral activity." Loren Data Corp. v. GXS, Inc., 501 F. App'x 275, 280 (4th Cir. 2012) (citing Am. Needle, Inc. v. NFL, 560 U.S. 183, 189–90 (2010)). Here, Plaintiff does not allege Defendants conspired with a third-party to "prevent[] Plaintiff from identifying herself as a PruittHealth Administrator." (Compl. (Doc. 1) ¶ 111.) Defendants' unilateral decisions cannot form the basis of Plaintiff's antitrust claim. See Loren Data, 501 F. App'x at 280. Accordingly, Plaintiff's second claim will be dismissed.

### D. **Claim Three: Retaliation in Violation of § 1983**

Plaintiff alleges Defendants retaliated against her in violation of 42 U.S.C. § 1983. (Compl. (Doc. 1) ¶¶ 117–28.)

-17-

Generally, the constitutional guarantees protected by § 1983 do not apply to the actions of private entities. See Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 341 (4th Cir. 2000). When "governmental authority . . . dominate[s] an activity to such an extent that its participants must be deemed to act with the authority of the government[, the ostensibly private participants are] . . . subject to constitutional constraints." Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991).

Defendants are private entities or individuals. (See Compl. (Doc. 1) ¶¶ 2-4.) Plaintiff has not alleged any governmental activity dominating the actions of Defendants such that § 1983 applies to them. Accordingly, Plaintiff's third claim will be dismissed.

### E.    Claim Four: § 1981 Discrimination

Plaintiff alleges Defendants discriminated and retaliated against her in violation of 42 U.S.C. § 1981. (See id. ¶¶ 129-36.) To state a discrimination claim premised on § 1981, "a plaintiff must show (1) his membership in a protected class; (2) his satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment." Tabb v. Bd. of Educ. of Durham Pub. Schs., 29 F.4th 148, 157 (4th Cir.

-18-

2022). Likewise, a plaintiff must allege the following elements to state a § 1981 retaliation claim: "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004).

Even assuming Plaintiff has plausibly alleged the first three elements of a § 1981 discrimination claim, Plaintiff has alleged no facts plausibly suggesting similarly situated employees outside of the protected class received more favorable treatment. Plaintiff's barebones legal conclusions are insufficient to survive a motion to dismiss. See Iqbal, 556 U.S. at 678. Similarly, Plaintiff has alleged no facts plausibly suggesting she engaged in any protected activity relating to alleged race discrimination. Plaintiff alleges no facts related to her race, alleged discrimination because of her race, or reporting of race discrimination that are anything more than barebones legal conclusions. (See Compl. (Doc. 1) ¶¶ 118, 126,

-19-

130.) Accordingly, Plaintiff's claims under § 1981 will be dismissed.

### F. **Claim Five: Breach of Contract**

Plaintiff alleges a breach of contract claim. (See Compl. (Doc. 1) ¶¶ 137-47.) Plaintiff alleges she "has a binding and enforceable contract with Defendant PruittHealth . . . which incorporated the PruittHealth Handbook." (Id. ¶¶ 139-40.) Plaintiff further alleges the "contract . . . was violated" because "Defendants failed to abide by the policy provided in the PruittHealth Handbook." (Id. ¶ 140-41.)

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). In a breach of contract action, the complaint must allege that a contract exists between the parties, as well as "the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to [the] plaintiff from such breach." Howe v. Links Club Condominium Ass'n, Inc., 263 N.C. App. 130, 139, 823 S.E.2d 439, 448 (2018) (internal quotation marks omitted) (alteration in original) (quoting RGK, Inc. v. U.S. Fid. & Guar. Co., 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977)). "Under longstanding North Carolina law, a valid contract requires (1) assent; (2) mutuality of obligation;

-20-

and (3) definite terms." <u>Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus</u>, 230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013).

Plaintiff has plausibly alleged these elements, and this court will therefore decline to dismiss Plaintiff's breach of contract claim. Contrary to Defendants' arguments that Plaintiff fails to identify any contract or contractual provision that was breached, (Defs.' Br. (Doc. 15) at 16–19), Plaintiff has made such allegations. She alleges the existence of at least one contract—her "hiring agreement." (<u>See</u> Compl. (Doc. 1) ¶ 144.) She also alleges this contract was breached. (<u>See</u> <u>id.</u>) She specifies the specific provisions breached, namely the "Handbook and Anti-Harassment Policies" which were "incorporated" into the contract.[8] (<u>Id.</u>; <u>see also, e.g.</u>, ¶¶ 17, 71, 140.) She further alleges the facts constituting the breach of these provisions by alleging that "Defendant PruittHealth has intentionally failed

_____

[8] Defendants argue that the Handbook and Anti-Harassment Policies do not constitute contractual obligations binding them because "Plaintiff has not identified a separate contract that expressly incorporates the Handbook or the Company's Anti-Harassment Policy." (Defs.' Br. (Doc. 15) at 18.) But Plaintiff has made such an identification when she alleges that her "hiring agreement . . . incorporated [the] Handbook and Anti-Harassment Policies." (Compl. (Doc. 1) ¶ 144.) The facts and language in the relevant documents may ultimately show that the Handbook and Anti-Harassment Policies were not so incorporated, but that is a matter for summary judgment—not a motion to dismiss. That is especially the case given that Plaintiff's pro se complaint is to be liberally construed. <u>Erickson</u>, 551 U.S. at 94.

-21-

and neglected to perform under the contract by placing Plaintiff on unjustified leave, refusing to allow Plaintiff to have contact with PruittHealth residents, attend professional meetings and failing to provide accommodations for her disability." (Id. ¶ 142.) Finally, Plaintiff alleges the amount of damages resulting to her from such breach. (Id. ¶ 147.) Defendant's motion to dismiss Plaintiff's breach of contract claim will therefore be denied.[9]

## G.  Claims Six, Seven, and Nine: Fraud, Fraudulent Inducement, and Negligent Misrepresentation

Plaintiff asserts claims for fraud, fraudulent inducement, and negligent misrepresentation against Defendants. (Compl. (Doc. 1) ¶¶ 148–69, 175–83.) Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies to state-law claims litigated in federal court, including claims for fraud, fraudulent inducement, and negligent misrepresentation. See Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 726–28 (M.D.N.C. 2015); Liris S.A. v. Morris & Assocs., Inc., 496 F. Supp. 3d 931, 937–38 (E.D.N.C. 2020).

---

[9] This court also rejects Defendants' argument that the breach of contract claim should be dismissed as to Defendants Jones, Mervin, and PruittHealth-Carolina Point. (Defs.' Br. (Doc. 15) at 16–17.) Plaintiff plainly states that "Defendants were and are a party to a written contract for employment." (Compl. (Doc. 1) ¶ 138 (emphasis added).) Further factual development may show that only PruittHealth was a party to the contract, but that is a matter for summary judgment.

To meet the heightened pleading standard under Rule 9(b), a plaintiff must sufficiently "describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" U.S. ex rel. Wilson v. Kellog Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)). This minimum factual description is "often referred to as the who, what, when, where, and how of the alleged fraud." Id. (internal quotation marks omitted) (quoting U.S. ex rel Willard v. Human Health Plan of Tex., Inc., 336 F.3d 375, 384 (5th Cir. 2003)). The purpose of this requirement is to satisfy the court "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784.

Under North Carolina law, fraud requires a "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). The third element requires more

-23-

than a mere allegation that a defendant intended to deceive; instead, to survive a motion a dismiss, a plaintiff must allege "additional facts demonstrating that at the time the statements were made, [the defendant] had no intention of honoring its promise." Packrite, LLC v. Graphic Packaging Int'l, Inc., No. 1:17CV1019, 2018 WL 4112827, at *5 (M.D.N.C. Aug. 29, 2018) (dismissing fraudulent misrepresentation/inducement claim for failing to meet Rule 9(b)'s heightened pleading standard); see also Strum v. Exxon Co., USA, 15 F.3d 327, 331 (4th Cir. 1994) ("Because [the plaintiff] has done nothing more than assert that [the defendant] never intended to honor its obligations under the . . . agreement, the district court's dismissal of the [fraud claim] was entirely appropriate."). These additional facts "most often include[] the speaker's contemporaneous statements to others contradicting his manifested intent or objective facts showing that his intent could not have been truthful when made." Id. (quoting Krispy Kreme Doughnut Corp. v. Advantage Grp. Enters., Inc., No. 1:08CV0092, 2008 WL 5216227, at *4 (M.D.N.C. Dec. 11, 2008)).

Plaintiff has failed to state any such additional facts, and thus has failed to plausibly allege Defendants' statements were made with the intent to deceive. Although Plaintiff does allege that "[a]t the time Plaintiff was offered the position

-24-

with Defendant PruittHealth, Defendants did not intend to abide by" the representations they made, (Compl. (Doc. 1) ¶ 151; see also id. ¶¶ 162, 167), such allegations are conclusory. They are not supported by any additional factual allegations such as Defendant's contemporaneous statements to others contradicting their manifested intent or objective facts showing their intent could not have been truthful. For these reasons, Plaintiff's fraud and fraudulent inducement claims have not been pleaded with the particularity required by Rule 9(b) and will be dismissed.

Rule 9(b)'s heightened pleading requirement also applies to negligent misrepresentation claims. See Topshelf Mgmt., 117 F. Supp. 3d at 727–28 (collecting cases). This court finds that, for the same reasons give above for the fraud and fraudulent inducement claims, Plaintiff's negligent misrepresentation claim has not been pleaded with sufficient specificity and will be dismissed. See Packrite, 2018 WL 4112827, at *5 (dismissing the plaintiff's negligent misrepresentation claim for the same reason—failure to allege additional facts showing intent to deceive—that the plaintiff's fraudulent misrepresentation/inducement claim was dismissed).

-25-

## H.   Claim Eight: Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing in the alternative to her breach of contract claim. (See Compl. (Doc. 1) ¶¶ 170-74.) Defendants argue "Plaintiff's claim fails because it is based on the same conduct underlying her breach of contract claim." (Defs.' Br. (Doc. 15) at 24.)

North Carolina recognizes a cause of action for a breach of the implied covenant of good faith and fair dealing. See Heron Bay Acquisition, LLC v. United Metal Finishing, Inc., 24 N.C. App. 378, 385, 781 S.E.2d 889, 894 (2016) ("In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." (internal quotation marks omitted) (quoting Bicycle Transit Auth. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985))). The Fourth Circuit has held that "a claim for a breach of the implied covenant of good faith and fair dealing is separate from a claim for breach of contract" under North Carolina law. See Nadendla v. WakeMed, 24 F.4th 299, 308 (4th Cir. 2022). Thus, contrary to Defendants' argument, Plaintiff may assert a claim for breach of the implied covenant of good faith and fair dealing. Id. ("[W]e find that [the plaintiff's] breach of the implied covenant of

-26-

good faith and fair dealing claim does not fail as a matter of law. Breach of the implied covenant of good faith and fair dealing is a separate claim from breach of contract, and it is not subsumed into the latter when the express terms of the contract do not preclude the implied terms which the plaintiff claims were breached.").

"A defendant cannot breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract." McDonald v. Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n, 259 N.C. App. 582, 587, 816 S.E.2d 861, 864-65 (2018). Here, Plaintiff has failed to plausibly allege the existence of a valid contract, so Plaintiff cannot plausibly allege Defendants breached any contract. See supra Section III.F. Therefore, this court finds Plaintiff's claim for breach of the implied covenant of good faith and fair dealing will be dismissed.

I. **Claims Ten and Eleven: Unjust Enrichment**

Plaintiff asserts two unjust enrichment claims. (See Compl. (Doc. 1) ¶¶ 184-92.) Plaintiff alleges that Defendants were unjustly enriched by not paying Plaintiff when she was on unpaid leave. (Id. ¶ 186.) Plaintiff also alleges Defendants were unjustly enriched by continuing to use Plaintiff's name, administrator license, and her accomplishments. (Id. ¶¶ 190-91.)

-27-

To state an unjust enrichment claim under North Carolina law, a plaintiff must allege "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enters., LLC, 226 N.C. App. 483, 490, 742 S.E.2d 555, 561 (2013) (internal quotation marks omitted) (quoting Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co., 211 N.C. App. 252, 259-60, 712 S.E.2d 670, 677 (2011)).

First, Plaintiff's allegation that Defendants were unjustly enriched by not paying Plaintiff while she was on unpaid leave fails to plausibly allege a benefit was conferred on Defendants because Plaintiff does not allege she was working—and thus providing a benefit to Defendants—while she was on unpaid leave. Plaintiff alleges she began unpaid leave in November 2020 and was terminated in February 2021. (Compl. (Doc. 1) ¶¶ 48, 51.)[10] Plaintiff does not allege she was working during those times. Thus, Plaintiff did not confer a benefit on Defendants.

However, Plaintiff's second unjust enrichment allegation— which asserts that Defendants were unjustly enriched by using

_____

[10] Plaintiff also alleges she was constructively terminated in November 2020, (see Compl. (Doc. 1) ¶ 48), further supporting the reasonable inference Plaintiff was not working for Defendants after November 2020.

-28-

Plaintiff's name, administrator license, and accomplishments—
does plausibly allege an unjust enrichment claim. Defendants
argue that this allegation fails to plausibly allege any
measurable benefit or a benefit that Defendants consciously
accepted. (Defs.' Br. (Doc. 15) at 25.) This court disagrees. It
is reasonable to infer, for example, that the benefit conferred
to Defendants through use of Plaintiff's "current and
unrestricted Administrator licensure" to receive "state
funding," and other financial gains, is measurable and tangible.
(See Compl. (Doc. 1) ¶ 191.) Plaintiff has also sufficiently
stated facts to plausibly allege that Defendants consciously
accepted this benefit; in fact, Plaintiff alleges that
Defendants' intention was to have Plaintiff "transfer[] her
license to Defendant PruittHealth's facility so that Defendants
would benefit financially and in reputation from the licensure
earned by Plaintiff." (Id. ¶ 79.)

Thus, Plaintiff has plausibly alleged an unjust enrichment
claim as to these allegations, which this court finds to be most
clearly contained in Claim Eleven. That claim will not be
dismissed. Defendant's other unjust enrichment claim, in Claim
Ten, will be dismissed because it is duplicative and does not
contain any other plausible allegations.

**J.** **Claim Twelve: Equitable Estoppel, Quasi-Estoppel, Mend the Hold**

Plaintiff asserts a claim for equitable estoppel, quasi-estoppel, and mend the hold. (See Compl. (Doc. 1) ¶¶ 193–94.) Plaintiff argues "PruittHealth should be estopped and prevented from denying that the [employee handbook] is part of the contract existing between Defendant PruittHealth and Plaintiff . . . ." (Id. ¶ 194.)

Estoppel is not an affirmative action under North Carolina law. See Laschkewitsch v. Legal & Gen. Am., Inc., 247 F. Supp. 3d 710, 721 (E.D.N.C. 2017) (collecting cases). Neither is mend the hold. See Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 24–26, 591 S.E.2d 870, 886–87 (2004) (explaining that the "'mend the hold' doctrine" is an affirmative defense "that precludes the assertion of inconsistent litigation positions, usually concerning the meaning of a contract, within the context of a single lawsuit"). Accordingly, this claim will be dismissed.

**K.** **Claim Thirteen: Declaratory Judgment**

Plaintiff seeks declaratory relief "to cure the wrongs identified" in her Complaint. (See Compl. (Doc. 1) ¶¶ 195–200.) Declaratory relief is discretionary; it is not "an absolute right" of the litigant. Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). Because Plaintiff's claim for declaratory

-30-

relief concerns the same alleged wrongs as identified elsewhere in her Complaint, Plaintiff's declaratory relief claim is redundant. Cf. Joe Hand Promotions, Inc. v. Hayes, 1:18CV531, 2019 WL 4246646, at *4 (M.D.N.C. Sept. 6, 2019) ("Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may, in its discretion, strike 'any redundant . . . matter from a pleading.' Some courts have exercised this power to dismiss declaratory counterclaims that are 'mirror images' of plaintiffs' initial claims." (internal citation omitted) (alteration in original) (quoting Fed. R. Civ. P. 12(f))). This court finds Plaintiff's claim for declaratory judgment should be dismissed.

**L.    Claim Fourteen: Injunctive Relief**

Plaintiff brings a claim for injunctive relief "to cure the wrongs identified above and prevent Defendants from taking future actions that violate Plaintiff's legal rights." (Compl. (Doc. 1) ¶ 202.) "[I]njunctive relief is not a claim for relief, rather it is a remedy under both federal and state law." Casper v. Carteret Cnty. News-Times, 1:18CV907, 2019 WL 2570040, at *2 (M.D.N.C. June 21, 2019). Thus, Plaintiff has failed to state a claim for relief. Additionally, this court finds Plaintiff has failed to plausibly allege any facts suggesting she is entitled to injunctive relief. Cf. Winter v. Nat. Res. Def. Council,

Inc., 555 U.S. 7, 20 (2008) (describing elements of a motion for preliminary injunction). This court finds Plaintiff's claim for injunctive relief should be dismissed.

IV.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Expansion of Word Limit, (Doc. 13), will be granted, and Defendants' Motion to Dismiss Plaintiff's Complaint, (Doc. 14), will be granted in part and denied in part.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Expansion of Word Limit, (Doc. 13), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint, (Doc. 14), is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** regarding Claims One, Two, Three, Four, Six, Seven, Eight, Nine, Ten, Twelve, Thirteen, and Fourteen. The motion is **DENIED** regarding Claims Five and Eleven.

This the 25th day of August, 2022.

_____
United States District Judge

-32-