IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
LATICIA N. BEATTY,                  )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )
                                    )
PRUITTHEALTH INC.;                  )    1:21-cv-818
PRUITTHEALTH – CAROLINA POINT,      )
LLC; KURTIS JONES, in his           )
individual and official             )
capacity; and DELLA MERVIN, in      )
her individual and official         )
capacity,                           )
                                    )
        Defendants.                 )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Laticia N. Beatty alleges one[1] claim against Defendants PruittHealth, Inc., Kurtis Jones, and Della Mervin for unjust enrichment under the North Carolina common law. (Doc. 1.) Defendants have moved for summary judgment, (Doc. 44), and the motion is ripe for review. For the reasons stated herein, Defendants' motion for summary judgment will be granted.

### I. FACTUAL BACKGROUND

The following facts, except where noted, are undisputed.

---

[1] In her Response to Defendant's Motion for Summary Judgment, Plaintiff abandons her breach of contract claim. (Doc. 49 at 6.)

Plaintiff was hired by Defendant PruittHealth, Inc. to be the licensed administrator of its Carolina Point skilled nursing facility in Durham, North Carolina in March of 2020. (Doc. 44-1 at 2-3.)[2] In the State of North Carolina, skilled nursing facilities like Carolina Point are required "to operate under an administrator licensed by the North Carolina State Board of Examiners for Nursing Home Administrators." (Doc. 44-5 at 3; see also Doc. 44-1 at 5; 10A N.C. Admin. Code 13D.2201(a).) To satisfy this requirement, Defendants hired Plaintiff as a salaried, full-time, licensed nursing home administrator at Carolina Point with an annual salary of $135,000. (Doc. 44-1 at 8, 10-11; Doc. 44-3 at 2-3.)

Plaintiff attests that her name was published on PruittHealth's website as administrator of Carolina Point. (See Doc. 44-1 at 37-40.) Defendant Kurtis Jones, PruittHealth's Area Vice President supervising Carolina Point and other facilities, disputes this fact, declaring that he has "never personally used [Plaintiff's] name, nursing home administrator's license, or accomplishments . . . to promote the Carolina Point Facility or

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

any other PruittHealth-affiliated facility on any website or anywhere else." (Doc. 44-5 at 5.)

Plaintiff's employment began on March 23, 2020, and she contracted COVID-19 on March 30, 2020. (Doc. 44-1 at 4.) While sick with and recovering from COVID-19, Plaintiff worked remotely from her home. (See Doc. 44-1 at 29; Doc. 49-1 at 6.) She attempted to return to working in person at the facility on May 30, 2020, but experienced continued medical complications that prevented her from being able to fully return to work. (Doc. 44-1 at 28; Doc. 44-6 at 3-4.) By September of 2020, Plaintiff "had been unable to report for work for several weeks and had provided documentation stating she would be unable to report for work until further notice and that her condition could last at least a year." (Doc. 44-5 at 3.)

During Plaintiff's absence, Jones worked at Carolina Point "on a regular basis to supervise its operations." (Doc. 44-5 at 3; Doc. 44-1 at 34, 39.) Jones became a licensed nursing home administrator in the State of North Carolina on August 6, 2020. (Doc. 44-5 at 3.) On September 9, 2020, Jones replaced Plaintiff as "interim administrator of record for the Carolina Point Facility." (Doc. 44-5 at 3-4; Doc. 44-3 at 5-7; Doc. 44-1 at 49-51; Doc. 44-6 at 4.) Plaintiff received her last work-related

communication from the Carolina Point Facility on September 11, 2020. (Doc. 44-1 at 63.)

Despite the fact that Plaintiff was no longer the licensed administrator of record for the Carolina Point facility, she received regular paychecks at her salaried rate of $135,000 per year until October 29, 2020. (Doc. 44-1 at 55; Doc. 44-4 at 1-8.) She also received bonus payments and PTO payments on October 30, 2020, November 12, 2020, and January 20, 2021. (Doc. 44-1 at 55-57; see also Doc. 44-4 at 8-9.) Plaintiff did not receive regular paychecks after October 29, 2020. (Doc. 44-1 at 55.) Plaintiff was finally terminated on February 8, 2021. (Doc. 44-1 at 44.)

## II. PROCEDURAL HISTORY

Plaintiff filed her Complaint alleging fourteen claims against Defendants on October 21, 2021. (Doc. 1.) On August 25, 2022, this court dismissed all claims for relief except for Plaintiff's breach of contract (Claim Five) and unjust enrichment (Claim Eleven) claims. (See Doc. 19 at 22, 29.) Defendants filed a Motion for Summary Judgment, (Doc. 44), and supporting memorandum, (Doc. 45), on December 29, 2023. Plaintiff filed a response on January 29, 2024, (Doc. 49), and Defendants replied on February 12, 2024, (Doc. 50). In her response to Defendants' motion for summary judgment, Plaintiff

- 4 -

abandoned her breach of contract claim as alleged in Claim Five. (See Doc. 49 at 6 ("Plaintiff proceeds on its unjust enrichment claim.").)

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718-19 (4th Cir. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

- 5 -

Case 1:21-cv-00818-WO-JEP   Document 56   Filed 09/23/24   Page 5 of 14

abandoned her breach of contract claim as alleged in Claim Five. (See Doc. 49 at 6 ("Plaintiff proceeds on its unjust enrichment claim.").)

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718-19 (4th Cir. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. This court must look to substantive law to determine which facts are material; only those facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. In addition, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247–48. "[T]he non-moving party must do more than present a 'scintilla' of evidence in its favor." Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

## IV. ANALYSIS

Plaintiff's sole remaining claim is one for unjust enrichment[3] arising under North Carolina common law principles. The North Carolina Court of Appeals

> has defined unjust enrichment as a "legal term characterizing the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself or herself at the expense of another . . . ."

---

[3] See Doc. 49 at 6.

- 6 -

Case 1:21-cv-00818-WO-JEP   Document 56   Filed 09/23/24   Page 6 of 14

Seraph Garrison, LLC ex rel. Garrison Enters., Inc. v. Garrison, 247 N.C. App. 115, 130, 787 S.E.2d 398, 410 (2016). "[T]he mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play. There must be some added ingredients to invoke the unjust enrichment doctrine." Crump v. City of Hickory, 2015 WL 1800352, at *3 (Apr. 15, 2015) (quoting Pearce River Elec. Coop., Inc. v. Ward Transformer Co., 116 N.C. App. 493, 509, 449 S.E.2d 202, 213 (1994)).

To establish an unjust enrichment claim, a plaintiff must show that: "(1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously." TSC Rsch., LLC v. Bayer Chems. Corp., 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008) (citing Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)).

Plaintiff argues that Defendants were unjustly enriched by her employment because Defendants received the benefit of Plaintiff's nursing home administrator license as well as her name and accomplishments, and that Plaintiff conferred those benefits "with the expectation that Defendants would provide a good working environment." (Doc. 49 at 8–9.) As she puts it, "Plaintiff's claim for unjust enrichment lies in the inducement

- 7 -

Case 1:21-cv-00818-WO-JEP   Document 56   Filed 09/23/24   Page 7 of 14

of Plaintiff to the company to use her license; to use her credibility to staff the facility; and use her expertise to increase the star rating." (Id. at 9.)

Defendants raise two arguments in favor of summary judgment. First, Plaintiff's claim for unjust enrichment must be dismissed because "there is no unjust enrichment as a matter of law where an employee is compensated for the services upon which the unjust enrichment claim is based." (Doc. 45 at 24.) Second, Plaintiff's unjust enrichment claim is untenable because "it is based on Plaintiff's contention that she was denied accommodations for her COVID-related medical issues which are the same allegations underlying her ADA claims that have already been dismissed by this Court." (Id.)

### 1. **Plaintiff's Salary**

Plaintiff asserts that, while operating under her administrator's license, Defendants obtained monetary benefits using her license and her reputation. (Doc. 44-1 at 34.) These benefits include PPP loans, Medicare/Medicaid funds, and other funding. (Doc. 49-1 at 29-30; Doc. 44-1 at 36-39.) Specifically, Plaintiff testified that Defendants obtained PPP funding using her license because "I was on their payroll and they got paid. They also got paid because I was the administrator that was — that was my license that was there that Kurtis was working

under, until he tested and got his own." (Doc. 49-1 at 29-30.) As to the Medicare/Medicaid funding, Plaintiff stated that Defendants used her license to obtain funding "[b]ecause they kept me as the administrator of their building as on file. . . . If you don't have an administrator, you don't — you cannot run the building. You have to have an administrator license, their credentials, their name." (Doc. 44-1 at 35-36.)

According to Plaintiff, the monetary benefits constituted unjust enrichment.[4] However, Plaintiff was paid her salary for the entirety of the time that Defendants operated the Carolina Point facility under her administrator license. (See Doc. 44-1 at 57–58.) Both North Carolina precedent and courts within this Circuit indicate that Defendants could not have been unjustly enriched by Plaintiff "performing the job she was paid a salary to perform:" here, serving as the licensed administrator for the

---

[4] In her response, Plaintiff contends that "Defendants continued to receive a benefit" after Jones replaced Plaintiff as administrator of the Carolina Point facility because "[w]hile they may have used Defendant Jones' administrator license beginning September 9, 2020, Defendants continued to receive the benefit of Plaintiff's expertise while she was working from home." (Doc. 49 at 7.) However, Plaintiff testified that she did not work from home after September 11, 2020. (Doc. 44-1 at 63 ("[T]he last call or the last thing was September the 11th.")).

- 9 -

Carolina Point facility. See Dulaney v. Inmar, Inc.,[5] 220 N.C. App. 415, 725 S.E.2d 473, 2012 WL 1514746, at *4 (May 1, 2012); McCabe v. Abbott Labs., Inc., 47 F. Supp. 3d 339, 348–49 (E.D.N.C. 2014) (quoting Dulaney, 2012 WL 1514746, at *4); Morris v. Taylor Commc'ns. Secure & Customer Sols., Inc., 2022 WL 767040, at *5 (W.D. Va. Mar. 14, 2022). "[W]hen an employee is paid a salary for the services she provides, she cannot successfully argue her employer was unjustly enriched by the employee's provision of such services." Crouch v. S.C. Dep't of Transp., No. CV 3:18-2045, 2020 WL 3867282, at *2 (D.S.C. July 8, 2020). Plaintiff was hired as the Carolina Point licensed administrator so that the facility could operate lawfully under her license, and Plaintiff was paid a salary for providing this service. Accordingly, based on the undisputed facts and the record before the court, Plaintiff cannot show that Defendants

---

[5] Plaintiff argues that Dulaney is not relevant here because it deals with a constructive trust "which is a different cause of action from unjust enrichment." (Doc. 49 at 10–11.) However, a constructive trust is a remedy for unjust enrichment, not a separate cause of action. See Dulaney, 2012 WL 1514746, at *3 ("A constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing."); see also Roper v. Edwards, 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988) ("[T]he constructive trust is seen by American courts today as a remedial device, to be used wherever specific restitution in equity is appropriate on the facts.").

were unjustly enriched at her expense, so summary judgment must be granted in favor of Defendants.

### 2. ADA Discrimination Claim Facts

Defendants argue further that Plaintiff's unjust enrichment claim "is based on Plaintiff's contention that she was denied accommodations for her COVID-related medical issues which are the same allegations underlying her ADA claims that have already been dismissed by this Court." (Doc. 45 at 24.) This court agrees.

Plaintiff's deposition testimony, along with her statement of the facts in her response to Defendants' motion for summary judgment, (see Doc. 49 at 2–4), demonstrates an attempt to bootstrap her previously-dismissed ADA discrimination claim into her sole remaining claim for unjust enrichment:

> Q: And if you received your full salary for the entire time that you were the administrator of record for the Carolina Point facility, then none of the defendants in this case could have been unjustly enriched, could they?
>
> A: Yes, they could.
>
> Q: How?
>
> A: I'm not asking for my salary. I'm asking for restitution. I'm asking for the times that I was not allowed fair — with the harassment. . . . I'm talking about not being allowed accommodations for my comorbidities or my disabilities as far as the COVID, as far as the asthma, and so it's not the fact that — or I was made to work when I was also being put out of work by my doctor.

- 11 -

(Doc. 44-1 at 58.) Plaintiff's conflation of an unjust enrichment claim with the alleged facts of her ADA discrimination claim is clear:

> Q: And so why is it then that anybody who's a licensed nursing home administrator, couldn't make the same claim you're making here today for restitution or unjust enrichment, why couldn't they claim the facility got money based upon their license and even though they received their full salary, that's still not enough, why couldn't they make that claim?
>
> A: I think . . . it depends on what happened per person. It's different. If they were treated badly and they had been harassed and violated, and they had not been given an environment where they could work in, and if they had — I believe that they should.
>
> ***
>
> A: . . . I feel as the things that I've gone through, it is just for me to receive compensation.

(Doc. 44-1 at 65, 68.)

"Under claim preclusion, parties are barred 'from retrying fully litigated issues that were decided in any prior determination, even where the claims asserted are not the same.'" Brumby v. Deutsche Bank Nat. Trust Co., 2010 WL 617368, at *5 (M.D.N.C. Feb. 17, 2010), report and recommendation adopted by 2010 WL 3219353 (M.D.N.C. Aug. 13, 2010) (quoting McCallum v. N.C. Coop. Extension Serv., 142 N.C. App. 48, 51, 542 S.E.2d 227, 231 (2001)). Here, Plaintiff's purported unjust enrichment allegations "mirror the allegations contained in a claim that has previously been dismissed from this case with

- 12 -

prejudice. . . . Plaintiff may not bootstrap previously dismissed claims into the sole remaining count in this action." Sonntag v. Balaam, 2010 WL 2990107, at *3 (D. Nev. May 6, 2010), report and recommendation adopted by 2010 WL 3210020 (D. Nev. Aug. 12, 2010); see also Sherrod v. Enigma Software Grp. USA, LLC, 2016 WL 25979, at *7 (S.D. Ohio Jan. 4, 2016) (finding plaintiff could not "bootstrap her previously dismissed fraud and misrepresentation claims back into the case by arguing that her breach-of-contract claim depends upon discovering whether Enigma's cancellation procedure was deceptive.").

Not only is Plaintiff's reassertion of her ADA allegations improper bootstrapping, but her statements also do not fulfill the elements of an unjust enrichment claim. To survive summary judgment, Plaintiff must demonstrate a genuine issue of fact as to whether (1) she conferred a measurable benefit to Defendants, (2) Defendants knowingly and voluntarily accepted that benefit, and (3) she did not give the benefit gratuitously. See TSC Rsch., LLC, 552 F. Supp. 2d at 540. Plaintiff's testimony that, while employed as the licensed administrator for the Carolina Point facility, she was not allowed accommodations for her disabilities simply does not support a finding that unjust enrichment occurred; therefore, summary judgment must be granted in favor of Defendants.

## V. CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants PruittHealth, Inc., PruittHealth-Carolina Point, LLC, Kurtis Jones, and Della Mervin's Motion for Summary Judgment, (Doc. 44), is **GRANTED**.

A Judgment dismissing this action will be entered contemporaneously herewith.

This the 20th day of September, 2024.

_____
United States District Judge