IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LATICIA N. BEATTY,                )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          1:21-cv-818
                                  )
PRUITTHEALTH INC.;                )
PRUITTHEALTH – CAROLINA POINT,    )
LLC; KURTIS JONES, in his         )
individual and official          )
capacity; and DELLA MERVIN, in    )
her individual and official       )
capacity,                         )
                                  )
          Defendants.             )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

     Before this court is Defendants' Motion for Attorneys'
Fees, (Doc. 59). Pursuant to Federal Rule of Civil Procedure 54
and Local Rule 54.2, Defendants PruittHealth, Inc., PruittHealth
— Carolina Point, LLC, Kurtis Jones, and Della Mervin
(collectively, "Defendants") move this court to order that
Plaintiff Laticia N. Beatty ("Plaintiff") pay Defendants'
attorneys' fees under N.C. Gen. Stat. § 6-21.5. (Id.) For the
reasons stated herein, Defendants' motion will be granted.

## I.   BACKGROUND

     This case is an employment dispute arising out of Defendant
PruittHealth, Inc.'s brief employment and then termination of

Plaintiff Laticia N. Beatty as a hospital administrator at PruittHealth, Inc.'s Carolina Point skilled nursing home facility in Durham, North Carolina, in 2020. The factual background of this case is more fully described in this court's memorandum opinion and order granting Defendants' motion for summary judgment. (See Mem. Op. & Order (Doc. 56) at 1–5.)[1]

Plaintiff commenced this action pro se on October 21, 2021, alleging in her Complaint fourteen claims against Defendants. (Compl. (Doc. 1).) On August 25, 2022, this court dismissed all but two of Plaintiff's claims; only her breach of contract claim (Count Five) and unjust enrichment claim (Count Eleven) survived. (See Mem. Op. & Order (Doc. 19) at 22, 29.) Plaintiff subsequently retained counsel to pursue her two remaining claims. (See Notice of Appearance of Counsel for Laticia N. Beatty & Req. for Notices (Doc. 26).) Following discovery, Defendants filed a Motion for Summary Judgment, (Defs.' Mot. for Summ. J. ("Mot. Summ. J.") (Doc. 44), and supporting memorandum, (Defs.' Mem. of Law in Supp. of their Mot. for Summ. J. ("Summ. J. Mem.") (Doc. 45)), on December 29, 2023. Plaintiff filed a response on January 29, 2024. (Pl.'s Mem. in Opp'n of Mot. for

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to page numbers located at the bottom right hand corned of the documents as they appear on CM/ECF.

Summ. J. ("Resp. Summ. J.") (Doc. 49).) In her response, Plaintiff abandoned her breach of contract claim. (Id. at 6 ("Plaintiff proceeds on its unjust enrichment claim.").) Defendants replied on February 12, 2024. (Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. ("Reply Summ. J.") (Doc. 50).) A jury trial was set for October 7, 2024. (Notice (Doc. 48).) However, on September 16, 2024, this court instructed the parties to stand down from trial preparation until further notice or entry of an order addressing Defendants' motion for summary judgment. (Docket Entry 09/16/2024.) This court then granted Defendants' motion for summary judgment on September 23, 2024. (Mem. Op. & Order (Doc. 56); Judgment (Doc. 57).)

Defendants filed a motion for attorneys' fees, (Defs.' Mot. for Att'ys' Fees ("Att'ys' Fees Mot.") (Doc. 59)), and a supporting memorandum, (Defs.' Mem. of Law in Supp. of Mot. for Att'ys' Fees ("Att'ys' Fees Mem.") (Doc. 60)), on November 22, 2024. Plaintiff responded on February 26, 2025, (Pl.'s Mem. in Opp'n of Mot. for Att'ys' Fees ("Resp. Att'ys' Fees Mot.") (Doc. 69), and Defendants replied on March 31, 2025, (Defs.' Reply to Pl.'s Resp. in Opp'n to Mot. for Att'ys' Fees) ("Reply Att'ys' Fees Mot.") (Doc. 72)). This motion is ripe for a ruling, and a hearing is not necessary to resolve the motion.

## II. **ANALYSIS**

### A. **N.C. Gen. Stat. § 6-21.5**

Defendants seek an award of attorneys' fees under N.C. Gen. Stat. § 6-21.5. (Att'ys' Fees Mot. (Doc. 59) at 1.) A federal court sitting in supplemental jurisdiction, as here, typically applies state law regarding the availability of an attorneys' fees award. See Davis v. Davis, 2023 WL 4181249, at *1 (4th Cir. June 26, 2023) ("A federal court sitting in diversity typically follows the applicable state law regarding the availability of an attorney's fees award." (citing Culbertson v. Jno. McCall Coal, Co., 495 F.2d 1403, 1406 (4th Cir. 1974)); McClean v. Duke Univ., 376 F. Supp. 3d 585, 597 (2019) ("This court, sitting in supplemental jurisdiction, 'has a duty to apply the operative law as would the highest court of the state in which the suit was brought.'" (quoting Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir. 1992))). North Carolina law, which governs here, permits a court to "award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." N.C. Gen. Stat. § 6-21.5; Davis, 2023 WL 4181249, at *1. Further, "the granting of any preliminary motion, such as . . . a motion for summary judgment . . . is not in itself a

- 4 -

sufficient reason for the court to award attorney's fees, but may be evidence to support the court's decision to make such an award." N.C. Gen. Stat. § 6-21.5.

Whether to award attorneys' fees under N.C. Gen. Stat. § 6-21.5 is within a trial court's discretion. Persis Nova Const., Inc. v. Edwards, 195 N.C. App. 55, 67, 671 S.E.2d 23, 30 (2009); Lostutter v. Olsen, No. 1:16-cv-1098, 2017 WL 3669557, at *13 (M.D.N.C. Aug. 24, 2017). The statute is strictly construed because "statutes awarding an attorney's fee to the prevailing party are in derogation of the common law." Sunamerica Fin. Corp. v. Bonham, 328 N.C. 254, 257, 400 S.E.2d 435, 437 (1991); Persis Nova Const., 195 N.C. App. at 65, 671 S.E.2d at 30. A court may only award attorneys' fees under this statute if it finds a "complete absence of a justiciable issue" raised by the

losing party in any of its pleadings.[2] <u>Sunamerica</u>, 328 N.C. at 257, 400 S.E.2d at 437. A justiciable issue is "an issue that is real and present as opposed to imagined or fanciful." <u>Id.</u> (cleaned up) (quoting <u>K & K Dev. Corp. v. Columbia Banking Fed. Savings & Loan</u>, 96 N.C. App. 474, 479, 386 S.E.2d 226, 229 (1989)). To find a "complete absence" of justiciable issues, "it must conclusively appear that such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment or to dismiss." <u>Id.</u> (quoting <u>K & K Dev. Corp.</u>, 96 N.C. App. at 479, 386 S.E.2d at 229).

> Under this deferential review of the pleadings, a plaintiff must either: (1) "reasonably have been aware, at the time the complaint was filed, that the pleading contained no justiciable issue;" or (2) be found to have "persisted in litigating the case after the point where [Plaintiff] should reasonably have become aware that [the] pleading [Plaintiff] filed no longer contained a justiciable issue."

---

[2] Under N.C. Gen. Stat. § 6-21.5, a court may only award attorneys' fees to, and upon the motion of, the prevailing party. <u>See</u> <u>Morgan v. Nash Cnty.</u>, 224 N.C. App. 60, 76-77, 735 S.E.2d 615, 625-26 (2012); <u>Persis Nova Const.</u>, 195 N.C. App. at 65-66, 671 S.E.2d 23, 29-30 (2009). For the purposes of this statute, however, a "prevailing party" is "a party who prevails on a claim or issue in an action, not a party who prevails <u>in the action</u>." <u>Persis Nova Const.</u>, 195 N.C. App. at 66, 671 S.E.2d at 30 (emphasis in original). Therefore, "attorneys' fees are available under Section 6-21.5 against any party who raises an issue in which there is a complete absence of a justiciable issue of either law or fact." <u>Id.</u>
Further, under the statute, a court may require the losing <u>party</u> to pay attorneys' fees to the prevailing party, but it cannot require the losing party's <u>counsel</u> to pay those fees. <u>Bryson v. Sullivan</u>, 330 N.C. 644, 665-67, 412 S.E.2d 327, 338-39 (1992).

- 6 -

<u>Wayne St. Mobile Home Park, LLC v. North Brunswick Sanitary</u>
<u>Dist.</u>, 213 N.C. App. 554, 561, 713 S.E.2d 748, 753 (2011)
(quoting <u>Credigy Receivables, Inc. v. Whittington</u>, 2023 N.C.
App. 646, 655, 689 S.E.2d 889, 895 (2010)).

###### B.   <u>**Absence of a Justiciable Issue**</u>

Defendants contend that they are entitled to attorneys'
fees under N.C. Gen. Stat. § 6-21.5 because Plaintiff pursued
her breach of contract and unjust enrichment claims "long after
it was clear that her Complaint no longer contained a
justiciable issue." (Att'ys' Fees Mem. (Doc. 60) at 1-2; Att'ys'
Fees Mot. (Doc. 59) at 5-6.) Specifically, Defendants assert
that Plaintiff knew or should have known that her two remaining
claims were non-justiciable by the end of July 2023 because, in
that month, Defendants provided as discovery to Plaintiff two
documents, an employee handbook and payroll records, that
"demonstrated that Plaintiff's claims had no legal basis."
(Att'ys' Fees Mot. (Doc. 59) at 2; <u>see</u> Att'ys' Fees Mem. (Doc.
60) at 11.) Therefore, Defendants maintain, Plaintiff's
continued litigation of these "meritless" claims for many months
after receiving these documents constitutes conduct entitling
Defendants to an award of attorneys' fees under the statute.
(Att'ys' Fees Mot. (Doc. 59) at 2-3; Att'ys' Fees Mem. (Doc. 60)
at 14.) This court agrees that Plaintiff pursued her unjust

enrichment claim beyond the point that she reasonably should have known it was not justiciable, but it disagrees as to when, specifically, Plaintiff traversed that point.

On Defendants' motion to dismiss for failure to state a claim, (Defs.' Mot. to Dismiss Pl.'s Compl. (Doc. 14)), this court dismissed all of Plaintiff's causes of action except for her breach of contract claim (Count Five) and one of her two unjust enrichment claims (Count Eleven). (Mem. Op. & Order (Doc. 19) at 32.) This court found that Plaintiff's <u>pro se</u> complaint sufficiently alleged the elements of breach of contract such that the claim satisfied the lenient 12(b)(6) standard. (<u>Id.</u> at 20-22.) Those elements are: first, existence of a valid contract, which requires showing "(1) assent; (2) mutuality of obligation; and (3) definite terms," <u>Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus</u>, 230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013); <u>Poor v. Hill</u>, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); and, second, breach of the terms of that contract, which requires showing "the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to the plaintiff from such breach," <u>Howe v. Links Club Condominium Ass'n, Inc.</u>, 263 N.C. App. 130, 139, 823 S.E.2d 439, 448 (2018) (cleaned up) (quoting <u>RGK, Inc. v. U.S. Fid. & Guar. Co.</u>, 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977)). This court

explained that Plaintiff's complaint plausibly alleged the existence of at least one contract, her "hiring agreement;" that this agreement "incorporated" Defendant PruittHealth's employee handbook and anti-harassment policies; that specific actions by Defendants violated those policies, thereby breaching "incorporated" provisions of the agreement; and the amount of damages resulting from such breach. (Mem. Op. & Order (Doc. 19) at 21–22 (citing Compl. (Doc. 1) ¶¶ 17, 71, 140, 142, 144, 147).) This court noted, however, that the facts might ultimately show that the hiring agreement did not incorporate the employee handbook and anti-harassment policies, though such a determination would be more appropriate at summary judgment. (Id. at 21 n.8.)

The note of caution was justified. The facts subsequently developed through discovery showed that the employment agreement between Defendants and Plaintiff did not expressly incorporate the employee handbook or the anti-discrimination policies contained therein, contrary to Plaintiff's allegations. (See Pl.'s Ex. 12 (Doc. 1-12); Ex. Attachment A (Doc. 44-1) at 6–8, 14–15.) Further, the express language of the employee handbook, to which Plaintiff's allegations referred, disclaimed any intent to form an enforceable contract. (See Ex. Attachment B (Doc. 44-2) at 3; see also Ex. Attachment A (Doc. 44-1) at 21, 24–25.)

- 9 -

Based on these facts, Defendants argued at summary judgment that Plaintiff's breach of contract claim failed as a matter of law because, in North Carolina, "a handbook may become legally binding '[o]nly if the terms of the handbook are expressly incorporated into a separately existing employment contract.'" (Summ. J. Mem. (Doc. 45) at 14 (quoting Green v. Caterpillar, Inc., No. 2:14CV00026-MR-DSC, 2014 WL 7910478, at *3 (W.D.N.C. Sep. 30, 2014)).) And, even if this were not the law, Defendants maintained that the handbook's express disclaimer makes the handbook and its contents non-binding on Defendants. (See Summ. J. Mem. (Doc. 45) at 19–21.) Plaintiff implicitly conceded these points when, in response to Defendants' motion for summary judgment, she abandoned her breach of contract claim. (See Resp. Summ. J. (Doc. 49) at 6; Mem. Op. & Order (Doc. 56) at 4–5.)

This court also declined to dismiss one of Plaintiff's two unjust enrichment claims. (Mem. Op. & Order (Doc. 19) at 28–29.) To make out a claim of unjust enrichment under North Carolina law, a plaintiff must allege "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enters., LLC, 226 N.C. App. 483, 490, 742 S.E.2d 555, 561 (2013) (cleaned up) (quoting Primerica Life Ins. Co. v. James

- 10 -

Massengill & Sons Constr. Co., 211 N.C. App. 252, 259-60, 712
S.E.2d 670, 677 (2011)). Plaintiff's pro se complaint alleged
that Defendants were unjustly enriched by using Plaintiff's
name, administrator license, and accomplishments; and those
allegations were sufficiently plausible to survive Defendants'
motion to dismiss. (Mem. Op. & Order (Doc. 19) at 28-29.) As
this court explained, it was reasonable to infer that through
Defendants' use of Plaintiff's administrator license to receive
state funding and other financial gains, Plaintiff conferred to
Defendants a measurable and tangible benefit. (Id. at 29.)
Further, this court found that Plaintiff plausibly alleged that
Defendants consciously accepted this benefit, (id.), and that
Plaintiff's conferral of this benefit was not gratuitous or
officious, (see id.; Mem. Op. & Order (Doc. 56) at 7.)

As with the breach of contract claim, the facts developed
through subsequent discovery undermined Plaintiff's allegations
in support of her unjust enrichment claim. Payroll records
produced by Defendants showed that Plaintiff was paid her
agreed-upon salary during the entire time that Defendants
operated under her administrative license. (Mem. Op. & Order
(Doc. 56) at 9; see Ex. Attachment D (Doc. 44-4); see also Ex.
Attachment A (Doc. 44-1) at 57-58.) Plaintiff was unable to
adduce evidence showing that Defendants used her license, name,

- 11 -

or reputation at any point other than during that period when she was paid her agreed-upon salary. (See Mem. Op. & Order (Doc. 56) at 9–11; Ex. Attachment A (Doc. 44-1) at 57–58.) On their motion for summary judgment, Defendants asserted these undisputed facts and argued that "North Carolina case law is clear that, where an employee is compensated for the services upon which any unjust enrichment claim is based, there is no unjust enrichment." (Summ. J. Mem. (Doc. 45) at 3.) Defendants further maintained that, insofar as Plaintiff sought to alternatively base her unjust enrichment claim on allegations that Defendants denied her accommodations for her COVID-related medical issues, Plaintiff attempted to impermissibly "bootstrap her previously dismissed ADA claim" into her remaining unjust enrichment claim. (Summ. J. Mem. (Doc. 45) at 2, 24).

Unlike her breach of contract claim, Plaintiff continued to pursue her unjust enrichment claim in response to Defendants' motion for summary judgment. (See Resp. Summ. J. (Doc. 49) at 6–12; see also Mem. Op. & Order (Doc. 56) at 6 ("Plaintiff's sole remaining claim is one for unjust enrichment . . . .").) Plaintiff argued that there was "sufficient disagreement" such that it was inappropriate for this court to grant Defendants' motion. (Resp. Summ. J. (Doc. 49) at 5–6.) But Plaintiff was unable to identify "specific facts showing that there is a

genuine issue for trial,"[3] see <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 718–19 (4th Cir. 2003), and her attempts to counter Defendants' legal arguments were frivolous, erroneous, or illogical. To Defendants' assertion that Plaintiff could not claim unjust enrichment where she was fully compensated for her work, Plaintiff responded by attacking the cited caselaw as wrongly decided, (<u>see</u> Resp. Summ. J. (Doc. 49) at 11 ("The Court improperly applied the facts to the law in <u>Dulaney</u>.")), and misstating hornbook law, (<u>see</u> <u>id.</u> at 10–12 (stating that "claims of constructive trust and unjust enrichment are two separate claims"[4] and arguing that <u>Dulaney v. Inmar, Inc.</u>, 220 N.C. App.

---

[3] Plaintiff sought to generate factual dispute by arguing that "Defendants continued to receive a benefit" after the point, on September 9, 2020, when the Carolina Point facility no longer operated under Plaintiff's license because "[w]hile they may have used Defendant Jones' administrator license beginning September 9, 2020, Defendants continued to receive the benefit of Plaintiff's expertise while she was working from home." (Resp. Summ. J. (Doc. 49) at 7.) But Plaintiff testified that she did not work from home after September 11, 2020, and she continued to receive her full salary through October 17, 2020. (Ex. Attachment A (Doc. 44-1) at 63–64.)

[4] As this court explained in its previous order granting summary judgment, (<u>see</u> Mem. Op. & Order (Doc. 56) at 10 n.5), a constructive trust is a remedy for unjust enrichment, not a separate cause of action. <u>See</u> <u>Dulaney</u>, 2012 WL 1514746, at *3 ("[A] constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing."); <u>see also</u> <u>Roper v. Edwards</u>, 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988) ("[T]he constructive trust is seen by American courts today as a remedial device, to be used wherever specific restitution in equity is appropriate on the facts." (internal quotations and emphasis omitted)).

- 13 -

415, 753 S.E.2d 473, 2012 WL 1514746 (May 1, 2012), was
therefore irrelevant because it dealt with a constructive
trust).) To Defendants' assertion that Plaintiff impermissibly
bootstrapped her ADA claim into her unjust enrichment claim,
Plaintiff responded with a non-sequitur: "Plaintiff's unjust
enrichment claim doesn't state that Defendants breached a
contract by not following its employee handbook," it states that
"Defendants' failure to follow its employee handbook resulted in
a benefit conferred upon Defendants that was not conferred
officiously or gratuitously. In other words, Defendants'
interference with her recovering from COVID-19, caused her to
relapse and caused her additional mental health issues,
resulting in damages to Plaintiff." (Resp. Summ. J. (Doc. 49) at
10.) This argument not only misdirects, but it fails to show the
necessary elements of the claim it means to assert. (See Mem.
Op. & Order (Doc. 56) at 13.)

Defendants prevailed on their motion for summary judgment.
(See Mem. Op. & Order (Doc. 56); Judgment (Doc. 57).) In
granting the motion, this court agreed with Defendants that, as
a matter of law under North Carolina and Fourth Circuit
precedents, Defendants cannot have been unjustly enriched by
Plaintiff "performing the job she was paid a salary to perform,"
that is, serving as the licensed administrator for the Carolina

- 14 -

Point facility. (Mem. Op. & Order (Doc. 56) at 9–10 (quoting Dulaney, 2012 WL 1514746, at *4).) This court also found that Plaintiff improperly attempted to reassert her dismissed ADA allegations in the form of her unjust enrichment claim. (Mem. Op. & Order (Doc. 56) at 11–13.) Because Plaintiff voluntarily abandoned her breach of contract claim, this court did not reach the substance of that claim or of Defendants' arguments to dismiss it. (See id. at 6.)

Even though Defendants are the "prevailing party" on the breach of contract and unjust enrichment claims, see Persis Nova Const., 195 N.C. App. at 66, 671 S.E.2d at 30, the grant of summary judgment is not sufficient to support an award of attorney's fees. Defendants may be awarded reasonable attorneys' fees under N.C. Gen. Stat. § 6-21.5 only if Plaintiff "persisted in litigating the case after the point where [she] should reasonably have become aware that [the] pleading [she] filed no longer contained a justiciable issue." Wayne St. Mobile Home Park, 213 N.C. App. at 561, 713 S.E.2d at 753 (internal quotation marks omitted) (quoting Credigy Receivables, 202 N.C. App. at 655, 689 S.E.2d at 895). This court finds that Plaintiff did so.

When Defendants filed their motion for summary judgment, Plaintiff reasonably should have known that her only two

- 15 -

remaining claims were no longer "real and present." See
Sunamerica, 328 N.C. at 257, 400 S.E.2d at 437. At that point,
even if not before, Plaintiff reasonably should have become
aware that she could not identify specific facts to support her
claim, see McLean, 332 F.3d at 718-19, and her attempts to
counter Defendants' legal arguments were erroneous. First,
Plaintiff's employment agreement with Defendants did not
incorporate the employee handbook or terms therein, and under
North Carolina law, an employee handbook's terms only become
legally binding if expressly incorporated into a separate,
existing contract, see Green, 2014 WL 7910478, at *3. Second,
Plaintiff was paid her agreed-upon salary during the entire time
that Defendants operated under her administrative license, and
under North Carolina law, an employer is not unjustly enriched
when an employee performs work for which they are fully
compensated, Dulaney, 2012 WL 1514746, at *4. Third, this court
dismissed with prejudice Plaintiff's ADA discrimination claims,
including claims of harassment and denial of reasonable
accommodations for her COVID-related medical issues, (Mem. Op. &
Order (Doc. 19) at 10-16, 32), and claim preclusion bars
Plaintiff from subsequently seeking compensation for
"harassment . . . [and] not being allowed accommodations for
[her] comorbidities or disabilities as far as the COVID," (Ex.

- 16 -

Attachment A (Doc. 44-1) at 58; see also id. at 65, 68), through a claim of unjust enrichment, see Brumby v. Deutsche Bank Nat. Trust Co., No. 1:09CV144, 2010 WL 617368, at *5 (M.D.N.C. Feb. 17, 2010), report and recommendation adopted by 2010 WL 3219353 (M.D.N.C. Aug. 13, 2010). Finally, Plaintiff was unable to adduce evidence or cite controlling caselaw to contradict any of the previous points.

Thus, based on the facts developed through discovery and Defendants' arguments in their memorandum supporting the motion, Plaintiff knew or reasonably should have known that her two remaining claims no longer presented a justiciable issue. Plaintiff's voluntary abandonment of her breach of contract claim in response to Defendants' motion for summary judgment shows that she was aware it was no longer viable. (See Resp. Summ. J. (Doc. 49) at 6.) However, Plaintiff continued to assert her unjust enrichment claim in response to the motion; and, thereby, she persisted in litigating her case beyond the point she should reasonably have become aware it no longer contained a justiciable issue.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff contends that her unjust enrichment claim was "one of first impression for North Carolina courts." (Resp. Att'ys' Fees Mot. (Doc. 69) at 3.) According to Plaintiff, this

- 17 -

is so because when this court held that "Defendants could not
have been unjustly enriched by Plaintiff 'performing the job she
was paid a salary to perform,'" (Mem. Op. & Order (Doc. 56) at 9
(quoting Dulaney, 2012 WL 1514746, at *4)), it cited cases
involving employees' voluntary resignations and commission
payments, whereas, in the present case, "Plaintiff was not
seeking commission in addition to her salary and was terminated,
rather than resigned." (Resp. Att'ys' Fees Mot. (Doc. 69) at 3–
6.) Therefore, "none of the cases the Court relied on are
analogous to the case at hand," Plaintiff argues, and "while the
Court extended the rule to Plaintiff's differing set of facts,
it does not make Plaintiff's case nonjusticiable." (Id. at 4.)

   This court understands the meaning of "case of first
impression" differently from how it is used in Plaintiff's

argument.[5] See Case, Black's Law Dictionary (12th ed. 2024)

(defining "case of first impression" as one that "presents the

court with an issue of law that has not previously been decided

by any controlling legal authority in that jurisdiction," that

---

[5] Additionally, as Defendants point out, (see Reply Att'ys'
Fees Mot. (Doc. 72) at 2), Plaintiff assumes without support
that a "case of first impression" is per se justiciable or, at
least, of such a nature that a plaintiff cannot reasonably know
that it is nonjusticiable until after a court rules on it, (see
Resp. Att'ys' Fees Mot. (Doc. 69) at 3-6). North Carolina courts
have held that sanctions under a different statute, N.C. Gen.
Stat. § 1A-1, Rule 11(a), "are inappropriate where the issue
raised by a plaintiff's complaint is one of first impression."
Herring v. Winston/Forsyth Cty. Bd. of Educ., 188 N.C. App. 441,
453, 656 S.E.2d 307, 315 (2008). However, Plaintiff does not
cite, and this court is unable to find, any caselaw holding the
same with respect to N.C. Gen. Stat. § 6-21.5. Admittedly, the
two statutes share some similar language — relevant here,
excepting from sanction "a good faith argument for the
extension, modification, or reversal of existing law." Compare
N.C. Gen. Stat. § 1A-1, Rule 11(a) (requiring a "pleading,
motion, or other paper" to be "grounded in fact and . . .
warranted by existing law or a good faith argument for the
extension, modification or reversal of existing law"), with id.
§ 6-21.5 ("A party who advances a claim or defense supported by
a good faith argument for an extension, modification, or
reversal of law may not be required under this section to pay
attorney's fees."). But the North Carolina Supreme Court has
emphasized the need to "differentiate between the application of
[N.C. Gen. Stat.] § 6-21.5 and Rule 11" because, "[w]hile the
language and to some extent the purposes of the two are similar,
they operate in very different ways." See Bryson, 330 N.C. at
660, 412 S.E.2d at 335. Insofar as Plaintiff seeks to invoke
this exception with her "case of first impression" argument,
this court finds to be objectively unreasonable any argument
Plaintiff may have made to modify or reverse the well-
established rule, discussed above, that foreclosed her unjust
enrichment claims. See Sunamerica, 328 N.C. at 256-60, 400
S.E.2d at 437-39 (applying objective reasonableness standard to
Section 6-21.5).

is, where "'there is a total lack of precedent'" (quoting Eugene
Wambaugh, The Study of Cases § 60 (2d ed. 1894)); In re
Facebook, Inc., IPO Sec. and Derivative Litig., 986 F. Supp. 2d
428, 483 (S.D.N.Y. 2013) ("[T]hat established law has not been
applied to a unique set of facts does not create an issue of
first impression; if it did, virtually any case might
qualify.").

Regardless of whether this is a "case of first impression,"
Plaintiff's argument misapprehends the legal principles that
foreclose Plaintiff's unjust enrichment claim. McCabe v. Abbott
Laboratories, one of the cases this court cited in its decision,
(see Mem. Op. & Order (Doc. 56) at 10), states the relevant law:

> Under North Carolina law, an unjust enrichment claim is
> "a claim in quasi contract or a contract implied in law."
> Rev O, Inc., v. Woo, 725 S.E.2d 45, 49 (N.C. Ct. App.
> 2012). "If there is a contract between the parties[,]
> the contract governs the claim and the law will not imply
> a contract." Booe v. Shadrick, 322 N.C. 567, 570, 369
> S.E.2d 554, 556 (1988). . . . [A]n at-will employment
> relationship is a contract of indefinite duration that
> either party can terminate at anytime. See, e.g.,
> Kurtzman v. Applied Analytical Indus., Inc., 347 N.C.
> 329, 331, 493 S.E.2d 420, 422 (1997); Burley v. U.S.
> Foods, Inc., 756 S.E.2d 84, 89 (N.C. Ct. App. 2014);
> accord Spriggs v. Diamond Auto Glass, 165 F.3d 1015,
> 1018 (4th Cir. 1999) (applying Maryland law).

McCabe, 47 F. Supp. 3d 339, 348-49 (E.D.N.C. 2014)[6]; see also Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment."); 1 Williston on Contracts § 1:6 (4th ed.) ("A court properly resorts to unjust enrichment or quasi-contract only in the absence of an express contract or contract implied-in-fact."). The factual distinctions Plaintiff seeks to draw (i.e., salary versus commission, resignation versus termination) are irrelevant to how this well-established law applied to the undisputed facts of Plaintiff's case, and Plaintiff was or reasonably should have become aware of that law and those facts when Defendants filed their motion for summary judgment. That is, an employment agreement — a contract — existed between Plaintiff and Defendants, Defendants' use of Plaintiff's administrator license fell within the scope of that contract, and Defendants paid Plaintiff her agreed-upon salary for the entire time she served as licensed administrator of record. (Mem. Op. & Order (Doc. 56) at 9-11.) Therefore, Plaintiff could not claim unjust enrichment. See McCabe, 47 F.

---

[6] Except for the initial quotation providing a general explanation of an unjust enrichments claim, the cases cited by the district court in McCabe are North Carolina Supreme Court or Fourth Circuit cases, see 47 F. Supp. 3d at 348-49, all of which are binding on this court.

Supp. 3d. at 349; Dulaney, 2012 WL 1514746, at *4; see also 1
Williston on Contracts § 1:7 ("There is no restitution when the
defendant has already paid the contract price for the benefits
received, even if the contract price is less than the cost or
value of the performance in question.").

Next, Plaintiff contends that she reasonably could not have
become aware that her alternative theory of unjust enrichment —
that Defendants were unjustly enriched by their "interference in
[Plaintiff's] recovering from COVID-19" — was nonjusticiable.
(See Resp. Att'ys' Fees Mot. (Doc. 69) at 6-9.) At summary
judgment, Defendants argued that this theory constituted
impermissible "bootstrapping" of her dismissed ADA claims,
(Summ. J. Mem. (Doc. 45) at 2, 25-28), and this court agreed,
(Mem. Op. & Order (Doc. 56) at 11-13). Plaintiff now argues that
the cases cited by Defendants and by this court on this issue
"are outside our jurisdiction and were used out of context."
(Resp. Att'ys' Fees Mot. (Doc. 69) at 7.) Therefore, Plaintiff
suggests that she had no basis upon which she reasonably could
have known claim preclusion barred her alternative theory. (See
id. at 7-9.) But Plaintiff ignores many of the cases cited by
Defendants or by this court. (See Summ. J. Mem. (Doc. 45) at 27-
28 (citing Brumby, 2010 WL 617368, at *5; Simmons v. Bank of
Am., N.A., No. PJM 13-0733, 2014 WL 509386, at *7 (D. Md. Feb.

- 22 -

6, 2014); Tolbert v. Nelson Cnty., 527 F. Supp. 836, 843 (W.D. Va. 1981); Shipkovitz v. Dovenmuehle Mortg., Inc., No. PX 16-0712, 2017 WL 6422375, at *2 (D. Md. July 31, 2017)); Mem. Op. & Order (Doc. 56) at 12 (citing Brumby, 2010 WL 617368, at *5).)

Even if Plaintiff was correct that the relevant, controlling law is insufficiently clear on the issue of "bootstrapping," her argument still fails because it ignores the other reason that her alternative theory was nonjusticiable. Plaintiff repeatedly described her alternative theory as "stat[ing] that Defendants' failure to follow its employee handbook resulted in a benefit conferred upon Defendants that was not conferred officiously or gratuitously. In other words, Defendants' interference in her recovering from COVID-19, caused her to relapse and caused her additional mental health issues, resulting in damages to Plaintiff." (Summ. J. Mem. (Doc. 45) at 10; Resp. Att'ys' Fees Mot. (Doc. 69) at 7; see also Ex. Attachment A (Doc. 44-1) at 58, 65, 68.) At summary judgment, this court explained that this not only represented an improper reassertion of her dismissed ADA claims, but that it failed to fulfill the required elements of unjust enrichment. (Mem. Op. & Order (Doc. 56) at 13.) For example, Plaintiff failed to describe or adduce evidence showing what, if any, benefit Defendants received from their alleged "interference" with

- 23 -

Defendants' recovery and her alleged subsequent "relapse" and "additional mental health issues." (See Resp. Summ. J. (Doc. 49) at 7–10). Simply put, at the point that Defendants filed their motion for summary judgment, Plaintiff knew or reasonably should have known the necessary elements of an unjust enrichment claim and, further, that her alternative theory were not supported by facts or law.

Finally, Plaintiff attempts to avoid an award of attorneys' fees by attacking Defendants' counsel. Plaintiff asserts that Defendants' counsel acted in "bad faith" in responding to discovery requests, and, therefore, "Defendants are estopped from arguing that they are entitled to attorneys' fees." (Resp. Att'ys' Fees Mot. (Doc. 69) at 9–10.) Specifically, Plaintiff alleges that Defendants' counsel "strung the plaintiff along under the guise of attempting to comply with the discovery requests," and that "[i]t wasn't until it was approaching the end of discovery[] that the defendants definitively refused to produce the requested material." (Id. at 9.) Plaintiff made this same allegation of "bad faith" on her motion to compel discovery, (see Pl.'s Reply Br. in Supp. of its Mot. to Compel Produc. of Docs. (Doc. 37) at 2–5), and the Magistrate Judge addressed it in her order on that motion:

> Plaintiff alleges that Defense counsel acted in bad
> faith by initially agreeing to an extension of the expert

- 24 -

disclosure deadline and by objecting to the discovery request but then continuing to engage in further discussion regarding those requests. This is a serious charge to make against a fellow member of the bar, and the Court finds no evidence of bad faith by Defense counsel. The evidence reflects that the parties worked together to try to resolve their discovery dispute, but ultimately Defense counsel rested on their objections and left it to Plaintiff to pursue a Motion to Compel, and this position was clear eight weeks before the close of discovery. Plaintiff may have misunderstood her obligations under the Local Rules with respect to the discovery schedule, but nothing about the parties' discussions reflects bad faith by either party.

(Order (Doc. 47) at 4 n.3 (emphasis added)). In other words, Plaintiff merely recycles an allegation that had already been adjudicated and found to be meritless. (See id.) The Magistrate Judge addressed this allegation directly and permanently; this court declines to disturb an order of another judge of this court.

Thus, for the reasons discussed above, this court finds that Defendants are entitled to an award of attorneys' fees under N.C. Gen. Stat. § 6-21.5 because Plaintiff "persisted in litigating [her] case after the point where [Plaintiff] should reasonably have become aware that [the] pleading [Plaintiff] filed no longer contained a justiciable issue." See Wayne St. Mobile Park, 213 N.C. App. at 561, 713 S.E.2d at 753 (internal quotation marks and citation omitted). This court further finds that point to be Defendants' motion for summary judgment on December 29, 2023, (Mot. Summ. J. (Doc. 44); Summ. J. Mem. (Doc.

- 25 -

45)). Therefore, this court will award Defendants "reasonable attorneys' fees" for the work performed by Defendants' counsel after that point.

This court recognizes that by limiting the award to only those reasonable attorneys' fees incurred after December 29, 2023, it significantly reduces the fees awarded from those requested. Defendants requested an award of the attorneys' fees they incurred beginning after July 31, 2023, on the basis that "Plaintiff knew or should have known that the claims in her Complaint were non-justiciable by July 31, 2023, because of records that she received earlier that month" — the payroll records and employee handbook that Defendants produced on July 1 and July 17, respectively. (Att'ys' Fees Mem. (Doc. 60) at 11–12; see also Att'ys' Fees Mot. (Doc. 59) at 6.) Defendants cite two cases as support for the proposition that Plaintiff's receipt of these records alone sufficiently establishes Plaintiff's awareness of her claims' nonjusticiability under Section 6-21.5. (See Att'ys' Fees Mem. (Doc. 60) at 14–15 (citing ACC Const., Inc. v. SunTrust Mortg., Inc., 239 N.C. App. 252, 269, 796 S.E.2d 200, 212 (2015); Wayne St. Mobile Home Park, 213 N.C. App at 556, 713 S.E.2d at 750).) However, this court understands those two cases as suggesting otherwise.

The first case Defendants cite, ACC Construction, Inc. v. SunTrust Mortgage, Inc., draws a connection between a party's awareness that its case no longer presents a justiciable issue and that party facing an argument or explanation as to why there is not a justiciable issue. There, the North Carolina Court of Appeals upheld an award of attorneys' fees under Section 6-21.5 where res judicata precluded the plaintiff's claims against a defendant because those claims had already been resolved by final judgment on the merits in a prior lawsuit between the parties. ACC Constr., 239 N.C. App. at 268-69, 769 S.E.2d at 211-12. The appeals court affirmed the lower court's finding that the plaintiff either "knew at the time the Complaint and Amended Complaint were filed in this [second] action that neither contained a justiciable issue," or "[e]ven if [the plaintiff] did not know the Complaint lacked a justiciable issue when it was filed, [the plaintiff] was clearly aware of that fact upon receiving emails from counsel for [the defendant] explaining why the Complaint was frivolous." Id. at 269, 769 S.E.2d at 212 (emphasis added). This language suggests that a factor in establishing whether and when a party became or reasonably should have become aware that its case no longer contains a justiciable issue is whether and when the party faced

- 27 -

argument or explanation of why its case lacked justiciable issues. See id.

Wayne Street Mobile Home Park, the second case cited by Defendants, also suggests such a connection. There, the court affirmed an award of attorneys' fees against a plaintiff under Section 6-21.5 where the plaintiff's awareness that its complaint lacked a justiciable issue was established, at least in part, by the fact that the defendant's counsel attempted to explain to the opposing counsel why the claims alleged in the plaintiff's complaint were nonjusticiable. See Wayne St. Mobile Home Park, 213 N.C. App. at 556, 562, 713 S.E.2d at 750, 753-54. Thus, as in ACC Construction, whether and when a party is presented with argument or explanation of why its case is nonjusticiable factors into the determination of that party's awareness thereof. See id.

In the present case, after reviewing those records of communications between Plaintiff's counsel and Defendants' counsel that are before this court, it appears to this court that Defendants' motion for summary judgment and their memorandum in support of that motion constituted the first instance in which Plaintiff was presented with facts or legal argument as to why each of her two remaining claims no longer

- 28 -

presented any justiciable issue. (See Ex. B (Doc. 59-1) at 48–
55; Ex. Attachment A (Doc. 44-1); Ex. Attachment A (Doc. 49-1).)

It is reasonable for Defendants to argue that it was
Plaintiff's responsibility to reevaluate her case in light of
the evidence produced in discovery without the prompting of
Defendants' arguments or explanations at summary judgment. It is
also reasonable for Defendants to further argue that Plaintiff
should have realized her two claims were no longer viable.
However, because of the specific facts of this case, its
procedural history, and the nature of the claims involved, this
court finds that the factor of notice through argument or
explanation weighs heavily here and supports the determination
that Defendants' filing of its motion for summary judgment on
December 29, 2023, constitutes the point when Plaintiff
reasonably should have known her case no longer contained a
justiciable issue.

North Carolina precedent also guides this court to limit
the award to only those reasonable attorneys' fees incurred
after December 29, 2023. In Fox-Kirk v. Hannon, the court held
that where attorneys' fees are awarded under Section 6-21.5 on
the basis that the non-prevailing "party persisted in litigating
the case after a point where he should reasonably have become
aware the pleading he filed no longer contained a justiciable

issue," and nonjusticiability was established through the "course of discovery," then fees should be awarded "from that point forward" and not for work performed prior. 142 N.C. App. 267, 280–81, 542 S.E.2d 346, 356 (2001) (emphasis, citation, and internal quotation marks omitted)). Accordingly, this court will award Defendants those reasonable attorneys' fees they incurred from that point, on December 29, 2023, forward. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Merritt v. S&S Mgmt. Grp., LLC</u>, 298 N.C. App. 132, 911 S.E.2d 797, 2025 WL 711834, at *4 (2025) ("[A] trial court is not required to award the full amount of attorney fees requested, as that is a determination within the trial court's discretion.").

C. <u>**Reasonable Attorneys' Fees**</u>

Having determined the Defendants are entitled to an award of attorneys' fees under N.C. Gen. Stat. § 6-21.5, this court now turns to the question of the "reasonableness" of the attorneys' fees requested by Defendants. <u>See</u> <u>GE Betz, Inc. v.</u> <u>Conrad</u>, 231 N.C. App. 214, 244, 752 S.E.2d 634, 655 (2013). Under North Carolina law, the following factors are relevant in assessing the reasonableness of an award pursuant to Section 6-21.5:

> the time and labor expended, the skill required, the customary fee for like work, the experience or ability of the attorney, the novelty and difficulty of the questions of law, the adequacy of the representation,

- 30 -

> the difficulty of the problems faced by the attorney,
> especially any unusual difficulties, and the kind of
> case for which fees are sought and the result obtained.

Id. (cleaned up) (quoting United Laboratories, Inc. v. Kuykendall, 335 N.C. 183, 195, 437 S.E.2d 374, 381–82 (1993)). This list is nonexclusive, and a court need not address all the factors listed, see id. (using inclusive and non-mandatory language: "[a]mong the aspects of representation that the trial may consider in assessing reasonableness are . . . ." (emphasis added)). However, North Carolina courts have held that a trial court must at least consider the first four factors, that is, "the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." See ACC Constr., 239 N.C. App. at 271, 769 S.E.2d at 213 (internal quotation marks omitted); see also Merritt, 298 N.C. App. 132, 911 S.E.2d 132, 2025 WL 711834, at *2 (Mar. 5, 2025).

Here, Defendants request a total attorneys' fees award of $129,328.20. (Att'ys' Fees Mot. (Doc. 59) at 6.) In support of this request, Defendants submitted the sworn declaration of Michael D. McKnight, Defendants' attorney of record, (Ex. 1 (Doc. 59-1) at 1–7), and the sworn declarations of John E. Branch III, (Ex. 2 (Doc. 59-2)), and Kevin M. Ceglowski, (Ex. 3 (Doc. 59-3)), two attorneys who do not represent the parties in

- 31 -

this case but who have personal knowledge of the relevant area of legal practice (employment and discrimination litigation), the market rates for lawyers who litigate in this practice area before this court, and the knowledge, skill, and quality of work of Defendants' counsel, (see Ex. 2 (Doc. 59-2); Ex. 3 (Doc. 59-3)). Defendants also submitted a detailed accounting of Defendants' attorney's fees billed for this case, with each line-item entry listing the date, timekeeper, task description, amount of time billed, billing rate, and amount billed. (Ex. A (Doc. 59-1) at 9-47.)

Defendants' total requested award encompasses fees incurred both before and after December 29, 2023. (Att'ys' Fees Mot. (Doc. 59) at 6; see Ex. A (Doc. 59-1) at 9-47.) The total requested award includes 203.8 hours billed before and including December 29, 2023, for a total billed amount of $79,129.80. (See Ex. A (Doc. 59-1) at 9-30.) It includes 126.5 hours billed after December 29, 2023, and through September 16, 2024, when this court ordered the parties to stand down from trial preparation pending entry of an order for summary judgment, (Docket Entry 9/23/2024), for a total billed amount of $50,198.40. (See Ex. A (Doc. 59-1) at 30-47.) For the reasons discussed above, this court will award Defendants only those reasonable attorneys' fees incurred after December 29, 2023. Thus, the question here

is whether, considering the relevant factors, Defendants'
request for $50,198.40 in attorneys' fees for 126.5 hours of
work performed after December 29, 2023, is reasonable.

First, this court finds reasonable the amount of time and
labor expended by Defendants' counsel between December 29, 2023,
and September 16, 2024. During this period Defendants' counsel:
expended 15.9 hours to successfully defend against Plaintiff's
motion to compel discovery, including a hearing on the motion,
(see Pl.'s Mot. to Compel Produc. of Docs. (Doc. 32); Decl. of
Richard M. Teichner (Doc. 46); Order (Doc. 47); Docket Entry
01/25/2024; Ex. A (Doc. 59-1) at 30-33 (entries 170-75, 177-
80)); expended 29.7 hours to reply to Plaintiff's response to
their motion for summary judgment, (see Resp. Summ. J. (Doc.
49); Reply Summ. J. (Doc. 50); Ex. A (Doc. 59-1) at 31-33
(entries 181-93)); and expended 80.9 hours to prepare for a jury
trial that had been set for October 7, 2024, before this court
instructed the parties to stand down from trial preparation on
September 16, 2024, and then subsequently granted Defendants'
motion for summary judgment on September 23, 2023. (See Notice
(Doc. 48); Joint Mot. for Continuance of Trial Setting & All
Related Pretrial Deadlines (Doc. 52); Order (Doc. 53); Joint
Mot. to Clarify Pretrial Deadlines (Doc. 54); Mem. Op. & Order
(Doc. 56); Judgment (Doc. 57); Docket Entry 09/16/2024; Ex. A

- 33 -

(Doc. 59-1) at 31, 33–47 (entries 176, 194–289).) Given the phase of litigation and the nature of these activities, this court finds the 126.5 hours expended by Defendants' counsel to be reasonable; and based on the clear descriptions of the nature of each task for which time was expended, (see Ex. A (Doc. 59-1) at 30–47), this court also finds the labor undertaken by Defendants' counsel to be reasonable.

Second, this court finds reasonable the staffing decisions made by Defendants' counsel. That is, the number and the experience or ability of Defendants' attorneys reasonably fit the skill required by the case, given the nature of the claims and the phase of litigation during the relevant period. Defendants were represented by three attorneys from the law firm of Ogletree, Deakins, Nash, Smoak & Steward, P.C. — one partner, Michael D. McKnight, and two associates, Savannah S. Trimmer and Tatiana M. Terry. (Ex. 1 (Doc. 59-1) at 2–3.) All three attorneys specialize in employment law and litigation, the area of law relevant to Plaintiff's claims. (See id. at 2–5.) At the time, Mr. McKnight had seventeen years of practice experience, Ms. Trimmer three, and Ms. Terry five. (See id.) Such experience was required, but not more than necessary, given the review, research, drafting, oral advocacy, and trial planning required by this case during the relevant period. Further, the allocation

- 34 -

of tasks between the three attorneys was appropriate given their respective levels of experience; for example, Ms. Trimmer and Ms. Terry performed the bulk of initial review, research, analysis, and drafting on motions memoranda, while Mr. McKnight subsequently reviewed and revised such memoranda and argued motions at hearings before this court. (See Ex. A (Doc. 59-1) at 30-47.)

Third, and finally, this court finds that the Defendants' counsel's hourly rates were reasonable given the rates customarily charged for similar work. During the relevant period, the hourly rates charged by Defendants' attorneys were $472.50 for Mr. McKnight, $351.00 for Ms. Trimmer, and $378.00 for Ms. Terry. (See Ex. 1 (Doc. 59-1) at 3-5.) In his sworn declaration, Mr. McKnight states that these rates are "typical of the rate[s] . . . charged by other North Carolina lawyers who have the same or similar experience." (Id. at 3.) The sworn declarations of Mr. Branch and Mr. Ceglowski confirm this to be true. (See Ex. 2 (Doc. 59-2) at 4; Ex. 3 (Doc. 59-3) at 3-4.) According to Mr. Branch, a law firm partner who practices employment law and litigation in North Carolina, including before this court, hourly rates for junior and mid-level associates of between $252.00 per hour and $378.00 per hour "are typical of those charged by similar law firms and lawyers in

North Carolina in employment litigation matters" and such rates are comparable to or, even, less than those charged by Mr. Branch's firm. (Ex. 2 (Doc. 59-2) at 3-4.) Mr. Ceglowski, also a law firm partner who practices employment law and litigation in North Carolina, similarly states that such rates "are typical of those charged by similar management-side employment law firms and lawyers in North Carolina in litigation matters." (Ex. 3 (Doc. 59-3) at 3-4.) Both Mr. Branch and Mr. Ceglowski further confirm, based on long-standing familiarity with Mr. McKnights' "knowledge and ability in employment litigation matters" and the "quality of his work," that an hourly rate of $472.50 is "consistent with the hourly rate charged by other lawyers in this area with his experience and abilities." (Ex. 2 (Doc. 59-2) at 4; Ex. 3 (Doc. 59-3) at 4.)

Thus, taking into consideration the relevant factors, this court finds that an award of attorneys' fees to Defendants in the total amount of $50,198.40 is reasonable.

III. **CONCLUSION**

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendants' Motion for Attorneys' Fees, (Doc. 59), is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Laticia N. Beatty shall pay attorneys' fees in the amount of Fifty Thousand One Hundred Ninety-Eight Dollars and 40/100 Cents ($50,198.40) to Defendants.

This the 18th day of February, 2026.

_____
United States District Judge